UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


MICHAEL BRAHAM,                    :
          Petitioner,              :
                                   :              PRISONER
     v.                            :  Case No. 3:02CV2153(JBA)
                                   :
HECTOR RODRIGUEZ,                  :
          Respondent.              :


RULING ON PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Michael Braham ("Braham"), currently confined at the Cheshire Correctional Institution in Cheshire, Connecticut, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction, pursuant to a guilty plea, on a charge of murder. For the reasons set forth below, the petition is denied.

I.   Procedural Background

In January 1998, Braham pled guilty to a charge of murder under Alford v. North Carolina, 400 U.S. 25 (1970). He was sentenced to a total effective term of imprisonment of thirty-two years. He did not file a direct appeal but filed a petition for writ of habeas corpus in state court on the grounds that he had been afforded ineffective assistance of counsel and had been misinformed about the possibility of parole. The petition was

denied and the denial was affirmed by the Connecticut Appellate
Court.  Braham v. Warden, 72 Conn. App. 1, 804 A.2d 951 (2002),
cert. denied, 262 Conn. 906, 801 A.2d 271 (2002).  Braham
initiated this action by petition for writ of habeas corpus
signed November 14, 2002.

II.  Factual Background

        The Connecticut Appellate Court described the background of
this case as follows.

> On June 24, 1996, in the area of 104
> Westbourne Parkway in Hartford, the
> petitioner shot and killed Jeffrey Murphy.
> The petitioner and the victim had attended a
> cookout that day where the petitioner
> consumed beer and smoked marijuana.  The
> petitioner and the victim had engaged in an
> argument that began the previous night over a
> sale of drugs.  The petitioner testified at
> the habeas trial that he had been angry about
> the continuing argument with the victim.
>
>     According to the petitioner, the victim
> threatened that he would "see" the petitioner
> when the petitioner did not have his gun.
> The petitioner interpreted that to mean that
> he and the victim were "at war now."  He then
> withdrew his gun and tried to strike the
> victim with it, but the victim ran away.  The
> petitioner proceeded to fire shots in the
> direction of the victim.  One of the bullets
> struck the victim and killed him.  The
> victim's cousin, Troy Murphy, witnessed the
> shooting and gave a statement to the police.
> The police seized the petitioner's shirt,
> which later tested positive for gunpowder.

Id. at 2-3, 804 A.2d at 953.

III.  Standard of Review

        The federal court "shall entertain an application for a writ

of habeas corpus in behalf of a person in state custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court.  See Estelle v. McGuire, 502 U.S. 62, 68 (1991); Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), significantly amended 28 U.S.C. §§ 2244, 2253, 2254, and 2255. The amendments "place[] a new constraint" on the ability of a federal court to grant habeas corpus relief to a state prisoner with respect to claims adjudicated on the merits in state court. Williams v. Taylor, 529 U.S. 362, 412 (2000) (plurality op.) (O'Connor, J.).  The federal court lacks authority to grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The federal law defined by the Supreme

3

Court "may be either a generalized standard enunciated in the
Court's case law or a bright-line rule designed to effectuate
such a standard in a particular context." Kennaugh v. Miller,
289 F.3d 36, 42 (2d Cir. 2002).

A decision is "contrary to" clearly established federal law
"if the state court applies a rule different from the governing
law set forth in [Supreme Court] cases, or if it decides a case
differently than [the Supreme Court] has done on a set of
materially indistinguishable facts." Bell v. Cone, 535 U.S. 685,
693 (2002). A state court decision is an "unreasonable
application" of clearly established federal law "if the state
court correctly identifies the governing legal principle from
[the Supreme Court's] decisions but unreasonably applies that
principle to the facts of the particular case." Id. When
considering the unreasonable application clause, the focus of the
inquiry "is on whether the state court's application of clearly
established federal law is objectively unreasonable." Id. The
Court has emphasized that "an unreasonable application is
different from an incorrect one." Id. (citing Williams, 529 U.S.
at 411 (holding that a federal court may not issue a writ of
habeas corpus under the unreasonable application clause "simply
because that court concludes in its independent judgment that the
relevant state-court decision applied clearly established federal
law erroneously or incorrectly.")). In both scenarios, federal
law is "clearly established" if it may be found in holdings, not

4

dicta, of the United States Supreme Court as of the date of the relevant state court decision.  Williams, 519 U.S. at 412.

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  See Boyette v. Lefevre, 246 F.3d 76, 88-89 (2d Cir. 2001) (noting that deference or presumption of correctness is afforded state court findings where state court has adjudicated constitutional claims on the merits).

Collateral review of a conviction is not merely a "rerun of the direct appeal." Lee v. McCaughtry, 933 F.2d 536, 538 (7th Cir.), cert. denied, 502 U.S. 895 (1991).  Thus, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." Brecht v. Abrahamson, 507 U.S. 619, 634 (1993) (citations and internal quotation marks omitted).

IV.  Discussion

In support of his petition, Braham raises the three grounds he asserted in his state habeas petition: (1) he did not receive effective assistance of counsel because his attorney incorrectly advised Braham that he would be eligible for parole after serving one-half of his sentence and did not adequately investigate and consult with Braham about evidence and possible defenses; (2) his guilty plea was not knowingly, intelligently and voluntarily made

because the only reason he pled guilty was his understanding that he would be paroled after serving one-half of his sentence; and (3) his guilty plea was accepted in violation of his right to due process because the state court judge failed to correct counsel's incorrect statement regarding parole.

A.    Ineffective Assistance of Counsel

An ineffective assistance of counsel claim is reviewed under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail, Braham must demonstrate, first, that counsel's conduct "fell below an objective standard of reasonableness" established by prevailing professional norms and, second, that this incompetence caused prejudice to him. Id. at 687-88. Counsel is presumed to be competent. Id. at 689 ("a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance..."). Thus, "the burden rests on the accused to demonstrate a constitutional violation." United States v. Cronic, 466 U.S. 648, 658 (1984). To satisfy the prejudice prong of the Strickland test, Braham must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "Reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome" of a trial. Id. When the ineffective assistance of counsel claim is premised on counsel's strategies or decisions,

6

the petitioner must demonstrate that he was prejudiced by his counsel's conduct.  To demonstrate prejudice in the context of a guilty plea, the petitioner must demonstrate that "counsel's constitutionally ineffective performance affected the outcome of the plea process."  Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also U.S. v. Couto, 311 F.3d 179, 187 (2d Cir. 2002).  That is, the petitioner must demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59.  Where the petitioner claims that counsel failed to advise him of available defenses, the "prejudice" inquiry must address objectively whether the defense likely would be successful at trial.  See id.  To prevail, Braham must demonstrate both deficient performance and sufficient prejudice. See Strickland, 466 U.S. at 700.  Thus, if the court finds one prong of the standard lacking, there is no need to consider the remaining prong.

In its analysis, the Connecticut Appellate Court applied the standard established in Strickland.  Because the state court applied the correct legal standard, Braham may obtain federal habeas relief only if the state court decision was an unreasonable application of that standard to the facts of this case.

The Connecticut Appellate Court set forth the following facts relating to Braham's claim that counsel was ineffective

7

because counsel incorrectly advised him that he would be eligible

for parole after serving one-half of his sentence:

> During the habeas trial, the petitioner
> testified that [counsel] had informed him
> that he would be eligible for parole on the
> thirty-two year plea offer after serving 50
> percent of the sentence and that he had
> relied on that information in deciding to
> plead guilty.[1]  The petitioner also cites to
> a portion of the January 22, 1998 sentencing
> transcript to support his claim.  He cites
> [counsel's] statement to the trial court:
> "And I've encouraged [the petitioner] to look
> at some other options, like pardon, board of
> parole board.  But I've explained to him that
> he's going to really do some hard work in
> terms of rehabilitating himself and changing
> his life around while incarcerated if he
> wants to get some consideration later down
> the road." [Counsel] denied that he ever told
> petitioner that he would have to serve only
> sixteen years of the agreed thirty-two year
> sentence.

Braham, 72 Conn. App. at 10-11, 804 A.2d at 957.

At the state habeas hearing, the court evaluated the

credibility of Braham and counsel.  The trial court credited

counsel's testimony that he never told Braham he would be parole

eligible after sixteen years over Braham's testimony to the

contrary, in part because of counsel's criminal defense

experience and his testimony that to have so advised Braham would

have constituted malpractice.  See Resp't's Mem. Ex. B at 25 &

Ex. A at 100.  Although the court characterized counsel's

---

[1]"General Statutes § 54-125a(b)(1) provided that there is no
eligibility for parole on a murder conviction."  Braham, 72 Conn.
App. at 10 n.7, 804 A.2d at 957 n.7.

statement as questionable, it concluded that his representation
was effective because the sentence Braham received under the plea
agreement was less than the sentence that could have been imposed
if he were convicted of either murder or manslaughter.  Thus, the
trial court concluded that Braham had not satisfied either prong
of the Strickland test.  See Resp't's Mem. Ex. B at 24-27.  The
Connecticut Appellate Court concluded that the state court did
not act improperly when it credited the testimony of counsel over
that of Braham.  Thus, the court determined that Braham failed to
meet the first requirement of the Strickland test.  See Braham,
72 Conn. App. at 11, 804 A.2d at 957-58.

        The factual findings of the state habeas court and the
Connecticut Appellate Court, which are presumptively correct,
have not been rebutted by clear and convincing evidence to the
contrary.  See 28 U.S.C. § 2254(e)(1).  During the plea colloquy
counsel referred to "encourag[ing]" the petitioner "to look at
some other options, like pardon, board of parole board" and
"explain[ing] to [the petitioner] that he's going to really do
some hard work in terms of rehabilitating himself ... if he wants
to get some consideration later down the road."  These ambiguous
statements could suggest some uphill potential for parole
eligibility.  They also show that the subject of pardon and/or
parole had previously been discussed between Braham and his
attorney.  However, alone they do not constitute advice that the
petitioner would actually be eligible for parole, let alone that

he would be eligible after serving fifty percent of his sentence, which would have been patently incorrect. Based on this record, the Connecticut Appellate Court's determination that Braham had not proved that he was advised, contrary to law, that he would become eligible for parole, is not an unreasonable finding of fact or application of the law. Thus, federal habeas relief is not warranted on this claim.

The Connecticut Appellate Court also considered whether counsel was ineffective in failing to investigate and discuss with Braham the defense of extreme emotional disturbance and the use of voluntary intoxication to negate intent.

In considering whether counsel provided effective assistance when he recommended that his client plead guilty without advising him of a potentially valid affirmative defense, the Supreme Court stated that "the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." Hill, 474 U.S. at 59; see also Panuccio v. Kelly, 927 F.2d 106, 109 (2d Cir. 1991) ("The likelihood that an affirmative defense will be successful at trial and an assessment of the probable increase or reduction in sentence relative to the plea if the defendant proceeds to trial are clearly relevant to the determination of whether an attorney acted competently in recommending a plea. Such a prediction when necessary, should be made objectively, without regard for the idiosyncrasies of the particular decisionmaker.") (internal

10

quotation marks and citations omitted).  The Second Circuit has
held that "this prong of the inquiry is not satisfied merely by
[petitioner's] testimony that he would have gone to trial had he
known of the defense, . . . since a defendant's testimony after
the fact suffers from obvious credibility problems." Panuccio,
927 F.2d at 109 (internal citations omitted).  Rather, the
petitioner must present "objective evidence" that he would have
rejected the plea offer.  United States v. Gordon, 156 F.3d 376,
380-381 (2d Cir. 1998).

The Connecticut Appellate Court recounted the following
facts relating to this claim:

> At the habeas trial, both the petitioner and
> [counsel] testified.  The court found
> [counsel's] testimony credible as to the
> reasons why he did not pursue the extreme
> emotional disturbance defense.  That
> determination was based on [counsel's]
> fifteen years of experience practicing
> criminal law.  Furthermore, the court found
> that [counsel] was aware of the possibility
> of an extreme emotional disturbance defense
> because the petitioner's mother had informed
> counsel of some emotional issues that the
> petitioner had. [Counsel] discussed with the
> petitioner the possibility of an extreme
> emotional disturbance defense, but made a
> decision not to pursue that defense.
>
>   The court found that the following reasons
> proffered by [counsel] justified his trial
> strategy not to pursue an extreme emotional
> disturbance defense.  First, [counsel] had
> examined the contents of a letter from the
> petitioner to a friend written one month
> after the killing.  The letter, dated July
> 29, 1996, indicated premeditation, a lack of
> remorse and even possible threats to
> potential witnesses.  Second, the state had a

11

strong case consisting of eyewitness
testimony and forensic evidence consisting of
the shirt seized from the petitioner on which
there was gunpowder.  Third, [counsel]
believed that a successful extreme emotional
disturbance defense would require the
petitioner to testify at trial, which would
allow the state to impeach him with his prior
criminal record.  Finally, [counsel] believed
that even if the extreme emotional
disturbance defense was successful, the
petitioner would be found guilty of
manslaughter in the first degree with a
firearm in violation of General Statutes §
53a-55a, which carries a possible forty year
sentence.  [Counsel] believed that if the
petitioner were convicted of manslaughter in
the first degree with a firearm, the best
sentence that the petitioner reasonably could
hope for would be forty years because of his
prior criminal history, a possible violation
of probation, the part B information and the
state's hard-line position against the
petitioner.

    [Counsel] reasoned that the thirty-two
year plea offer was better that the risk of
trial where the petitioner faced a possible
sixty-year sentence if convicted of murder
and, at best, a forty year sentence if the
extreme emotional disturbance defense
succeeded and the petitioner was found guilty
of manslaughter in the first degree with a
firearm.  In considering all of these
factors, [counsel] decided not to pursue an
extreme emotional disturbance defense at
trial.

Braham, 72 Conn. App. at 7-9, 804 A.2d at 956-57 (footnotes

omitted).  In addition, Braham failed to present any evidence at

the state habeas hearing to suggest that he actually suffered

from an extreme emotional disturbance at the time of the

shooting.  Rather, he admitted that he was angry with the victim

and, although he had been angry with him at other times, had

12

previously been able to control his emotions.  See Resp't's Mem. Ex. A at 15-16.

Considering all of the factors the lower court found, the Connecticut Appellate Court agreed that counsel's decision not to pursue an extreme emotional disturbance defense was not deficient and instead fell within the ambit of the trial strategy of a reasonably competent trial attorney.  Thus, the Appellate Court concluded that Braham failed to meet the first prong of the Strickland test.  Braham has provided nothing other than his own statement that he would have elected to proceed with trial if he had been informed of the possible defenses.  This bald assertion is insufficient to demonstrate that he was prejudiced by trial counsel's actions.  See Panuccio, 927 F.2d at 109.

With regard to the use of voluntary intoxication to negate intent, the Connecticut Appellate Court agreed with the Superior Court's finding that, although Braham presented evidence that he had consumed alcohol and smoked marijuana on the day of the shooting, he had not presented any evidence to show that he was intoxicated at the time he shot the victim.  Thus, the Connecticut Appellate Court concluded that counsel was not ineffective "by failing to proffer evidence of intoxication to negate intent."  Braham, 72 Conn. App. at 10, 804 A.2d at 957.

Braham has not provided clear and convincing evidence to negate the presumption of correctness afforded the state court findings of fact.  Thus, this court concludes that the decision

13

of the Connecticut Appellate Court regarding Braham's various claims of ineffective assistance of trial counsel was not an unreasonable application of the law to the facts of this case. Accordingly, the petition for writ of habeas corpus is denied on this ground.

     B.   <u>Plea Not Knowingly, Intelligently or Voluntarily Made</u>

     In his second ground for relief, Braham argues that he was denied due process in that his guilty plea was not knowingly, intelligently or voluntarily made. He alleges that he entered the plea in reliance on counsel's statement that he would be eligible for parole after serving sixteen years and would not have pled guilty had he known that he would not be eligible for parole.

     At the hearing on his state habeas petition, Braham conceded that, during the plea canvas, he heard the judge say that he probably would have been found guilty at trial and did not correct the judge or counsel. <u>See</u> Resp't's Mem. Ex. A at 64-65. Braham also stated that he never told counsel that parole eligibility was the only reason he agreed to plead guilty. <u>See</u> Resp't's Mem. Ex. A at 76.

     This claim is obviously closely linked to Braham's first claim. Both claims are based on Braham's allegation that counsel incorrectly advised him regarding parole eligibility. Based on the determination that counsel did not advise Braham that he would be eligible for parole after sixteen years, the Connecticut

14

Appellate Court rejected this claim as well.  See Braham, 72 Conn. App. at 13, 804 A.2d at 959.

Because this court has concluded that the Connecticut Appellate Court's determination that Braham was afforded effective assistance of counsel was not an unreasonable application of Supreme Court precedent, and because Braham's due process claim is based on the same facts as his ineffective assistance of counsel claim, this court concludes that the denial of this claim was similarly not an unreasonable application of Supreme Court precedent.  Thus, federal habeas relief is denied on Braham's second ground.

C.    Trial Court's Failure to Correct Misinformation

For his final ground for relief, Braham argues that he was denied due process when the trial court accepted his guilty plea without correcting defense counsel's misstatement suggesting that Braham would be eligible for parole.

The Supreme Court has not laid out criteria for determining whether or when a trial court's failure to correct misinformation regarding parole eligibility stated by defense counsel during a guilty plea canvass violates a defendant's constitutional due process right.[2]  For this reason, the determination of the

---

[2]Cf. Hill, 474 U.S. at 60 ("erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel" if in the absence of such advice the defendant "would have pleaded not guilty and insisted on going to trial...").

Connecticut Appellate Court that the trial court did not err in failing to correct any misinformation provided to Braham by his attorney is not contrary to governing Supreme Court case law.  As this court has found above, the Connecticut Appellate Court also did not err in determining as a factual matter that the ambiguous statement of Braham's attorney at the plea colloquy did not constitute an incorrect representation that Braham would be eligible for parole.  Therefore the Appellate Court's holding that the trial court did not commit constitutional error by failing to correct defense counsel's statement was not an unreasonable application of Supreme Court law to the facts of this case as required for federal habeas corpus relief under 28 U.S.C. § 2254(d).

V.    Conclusion

The petition for a writ of habeas corpus [doc. #1] is DENIED.  "Petitioner's Motion in Support of Granting Writ of Habeas Corpus" [doc. #7] also is DENIED.  Because Braham has not made a showing of the denial of a constitutional right, a certificate of appealability will not issue.  The Clerk is directed to enter judgment accordingly and close this case.

IT IS SO ORDERED.

_____
Janet Bond Arterton
United States District Judge

16

Dated at New Haven, Connecticut, February 3, 2005.